**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **TRISTAR INVESTORS, INC.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| **AMERICAN TOWER CORPORATION,** § | |
| et al., § | |
| § | |
| Defendants. § | |
| § | **CIVIL ACTION NO. 3:12-CV-499-M** |
| § | |
| **AMERICAN TOWER, LLC, et al.,** § | |
| § | |
| Counter-Plaintiffs, § | |
| § | |
| v. § | |
| § | |
| **TRISTAR INVESTORS, INC., et al.,** § | |
| § | |
| Counter-Defendants. § | |
| § | |

**PLAINTIFF'S RESPONSE TO AMERICAN TOWER'S MOTION TO**
**MODIFY THE SCHEDULING ORDER AND FOR CONTINUANCE OF TRIAL DATE**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT & AUTHORITIES .........................................................................................3

1. American Tower's lack of diligence is the primary cause of its purported need to extend the deadlines set in the Scheduling Order. ............................................................5

   a. The Court's Scheduling Order allows for ample time to conduct discovery. ..........5

   b. The issues in the case are largely unchanged, and American Tower has not been diligent in conducting discovery. ................................................................5

2. There is sufficient time in the Scheduling Order to extend the discovery deadline without moving the trial date. ..........................................................................................8

3. A continuance of the trial date would prejudice TriStar. .................................................9

CONCLUSION ....................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Alexandria v. Cleco Corp.*,
 1:05-cv-01121 (W.D. La. Nov. 24, 2009) ................................................................................ 8

*Cartier v. Egana of Switzerland (Am.) Corp.*,
 Civil Action No. 3:08-CV-00001-D, 2009 WL 614820 (N.D. Tex. Mar. 11, 2009).................. 9

*Daniel J. Hartwig Assocs., Inc. v. Kanner*,
 913 F.2d 1213 (7th Cir. 1990) ................................................................................................. 6

*Geiserman v. MacDonald*,
 893 F.2d 787 (5th Cir. 1990) ................................................................................................... 4

*Jochims v. Isuzu Motors, Ltd.*,
 145 F.R.D. 507 (S.D. Iowa 1992) ..................................................................................... 11, 12

*Kirkwood v. Inca Metal Prods. Corp.*,
 Civil Action No. 3:04-CV-0226-D, 2007 WL 2325222 (N.D. Tex. Aug. 13, 2007) ................ 8

*L & C Consultants v. Ash Petroleum*,
 Civil Action No. 3:07-CV-1904-D, 2008 WL 3884366 (N.D. Tex. Aug. 12, 2008) ......... 3, 5, 8

*Schaffner v. Crown Equip. Corp.*,
 No. C 09-00284 SBA, 2011 WL 6303408 (N.D. Cal. Dec. 16, 2011) ................................ 7, 11

**Rules**
FED. R. CIV. P. 16(b)(4) ............................................................................................................... 3

## INTRODUCTION

On July 3, 2012, this Court entered a Scheduling Order setting this case for trial on the Court's two-week docket beginning October 28, 2013. In that Scheduling Order, the Court warned the parties in bolded text that "**[i]t is only under truly extraordinary circumstances that the Court will reset the trial date**." Scheduling Order (Doc. 30) at ¶ 14. American Tower now asks this Court to reset the trial date in a motion that completely ignores the standard set by the Court in the Scheduling Order. While American Tower's motion is long on the purported merits of its case, it is short on justifications for resetting the trial date.[1] At best, American Tower's motion supports a short extension of the discovery deadline, which TriStar has already offered. But American Tower provides no grounds—and certainly nothing rising to the level of "truly extraordinary circumstances"—for extending the October 28 trial setting.

Despite American Tower's delay in pursuing discovery, TriStar offered to agree to extend the discovery deadline by another sixty days.[2] With discovery currently scheduled to end on May 21, TriStar's proposal would give American Tower—represented by two of the largest law firms in the country—about eleven more weeks to review documents and conduct the remaining depositions that it believes it needs.[3] American Tower declined this offer, ostensibly because such an extension would affect the remainder of the pretrial deadlines. But there is plenty of room in the scheduling order to accommodate a sixty-day extension of discovery and,

---

[1] Much of American Tower's motion focuses on how strong its case is on the merits. While such a discussion is not appropriate in a motion for continuance, TriStar notes its disagreement with American Tower's characterization of the evidence it has obtained in discovery. Indeed, if American Tower were truly as proud of its case as it trumpets over more than ten pages of its motion, it should be seeking an expediting of the trial setting, not a continuance.

[2] The parties have previously agreed, on two occasions, to move the discovery deadline. The current deadline, set by agreement reached on January 31, 2013 (Doc. 85), is May 21, 2013.

[3] American Tower's purported need for additional documents before it can depose TriStar's management team is puzzling in light of the fact that American Tower apparently had sufficient documents to depose TriStar's corporate representative, co-founder and president, and vice president of operations (whom American Tower wrongly identifies as being a marketing employee), among others.

to the extent necessary, a short extension of some of the other pretrial deadlines without impacting the October 28 trial setting. American Tower's true reason for seeking to move the trial date is to delay resolution of this action, as has been American Tower's strategy since the start of this litigation. Because this delay tactic is not a valid reason—and certainly does not constitute "truly extraordinary circumstances"—to reset the trial date, American Tower's motion should be denied.

## BACKGROUND

This is a case about unfair competition, false advertising, and anticompetitive conduct in the cellular tower industry. TriStar, a small private company of about forty employees, was founded in 2005 to acquire—and ultimately operate—the best tower sites in the country by increasing the compensation paid to the owners of property on which cellular towers are built. Faced with competition from TriStar, American Tower, a massive publicly traded corporation, has resorted to unfair and illegal tactics in negotiating with landowners. Rather than competing fairly and acquiring sites through superior offers, American Tower systematically deceives landowners across the country, threatening to tear down or relocate towers of landowners who do business with TriStar and telling landowners that TriStar is going to go bankrupt, among other false statements. American Tower's anticompetitive conduct is aimed at driving TriStar out of business so that American Tower can maintain its monopoly at thousands of cellular tower sites throughout the country.

In an effort to stop American Tower's illegal conduct and force American Tower to compete fairly, TriStar filed this lawsuit on February 16, 2012. But American Tower has not been deterred by this litigation. Its campaign of deceiving landowners continues unabated.[4]

---

[4] In fact, American Tower has increased its anticompetitive conduct since this litigation was filed. In addition to its continued deception of landowners, American Tower also filed sham litigation against TriStar in several states and

Because American Tower's anticompetitive conduct threatens to put TriStar out of business, TriStar sought an early trial date when the parties conferred to prepare a Joint Status Report near the start of the litigation. TriStar offered to accept the Court's expedited trial program, whereby the case would have been set for trial within six months of filing. Pl.'s App. at 8-9 (Decl. of Tyler J. Bexley at ¶ 3). When American Tower declined TriStar's offer, TriStar proposed a May 2013 trial date, while American Tower wanted an April 2014 trial date. *Id.* at 9 (Decl. of Tyler J. Bexley at ¶ 4). The parties eventually compromised on the mutually agreeable setting of October 28, 2013, which this Court accepted in the Scheduling Order. *Id.*

## ARGUMENT & AUTHORITIES

Under the Federal Rules of Civil Procedure, a scheduling order may be modified "only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The party seeking to modify the scheduling order has the burden to show that "despite [its] diligence, [it] could not reasonably have met the scheduling deadline." *L & C Consultants v. Ash Petroleum*, Civil Action No. 3:07-CV-1904-D, 2008 WL 3884366, at *1 (N.D. Tex. Aug. 12, 2008) (Fitzwater, C.J.). This Court's Scheduling Order imposes an even more stringent standard when a party seeks to reset the trial date, requiring a showing of "truly extraordinary circumstances." Scheduling Order (Doc. 30) at ¶ 14.

The Fifth Circuit, this District, and this Court each recognize the importance of a firm trial setting and adherence to a scheduling order. The Fifth Circuit has observed that

> delays [in discovery] are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to

---

has recently begun making misrepresentations to zoning boards in an effort to prevent TriStar from operating sites it has acquired. *See* Pl.'s App. at 56-60; 62-64 ███████████████████████████████████

reasonable deadlines is critical to restoring integrity in court proceedings.

*Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990). Similarly, this District's Civil Justice Expense and Delay Reduction Plan (which this Court referred to in the portion of the Scheduling Order on motions for continuance) provides that "[a] credible, firm trial date is the *sine qua non* of reducing excessive costs and delay." United States District Court for the Northern District of Texas Civil Justice Expense and Delay Reduction Plan at 2. Finally, this Court, in both the Scheduling Order and the Court's Specific Requirements, emphasizes the importance of the trial date. *See* Scheduling Order (Doc. 30) at ¶ 14 ("**It is only under truly extraordinary circumstances that the Court will reset the trial date**."); Requirements for District Judge Barbara M.G. Lynn at § I(C), http://www.txnd.uscourts.gov/judges/blynn_req.html ("The trial date is set in the Scheduling Order, and will be not changed absent **extremely good cause**."); *id.* at § II(A)(2) (stating that motions for continuance are "[n]ot favored, but if imperative, should be filed as early as possible").

American Tower has not come close to demonstrating the "truly extraordinary circumstances" or "extremely good cause" that this Court requires to reset the trial date. First, any delays in the discovery process are largely of American Tower's own making. Second, there is sufficient time in the pretrial schedule to accommodate a short extension of discovery without necessitating movement of the trial date. Finally, resetting the trial date will significantly prejudice TriStar by driving up litigation costs and delaying resolution of this litigation. For all of these reasons, the Court should deny American Tower's motion.

1.  **American Tower's lack of diligence is the primary cause of its purported need to extend the deadlines set in the Scheduling Order.**

    a.  **The Court's Scheduling Order allows ample time for discovery.**

    Under the Scheduling Order originally entered by the Court, fact discovery was set to close March 5, 2013. Scheduling Order (Doc. 30) at ¶ 9. The parties have twice agreed to extend the discovery deadline, setting the current deadline at May 21, 2013. *See* Docs. 80 & 85. With TriStar's offer to extend the deadline by another sixty days, American Tower would have until July 22, 2013—more than seventeen months after this action was filed—to conduct discovery. Even in a complex case such as this one, seventeen months is more than enough time to conduct discovery, particularly for a company with American Tower's resources.

    b.  **The issues in the case are largely unchanged, and American Tower has not been diligent in conducting discovery.**

    American Tower has been dilatory in pursuing discovery, and it therefore cannot meet its burden to show that "despite [its] diligence, [it] could not reasonably have met the scheduling deadline." *See L & C Consultants*, 2008 WL 3884366, at *1. TriStar filed this action on February 16, 2012. *See* Pl.'s Compl. (Doc. 1). American Tower filed its Answer and Counterclaim over thirteen months ago on March 23, 2012. *See* Defs.' Answer & Countercl. (Doc. 9). Although American Tower now insists that "the scope of the case has expanded" since the parties amended their pleadings, the issues are largely the same as when the parties submitted their Joint Status Report on which the Court's Scheduling Order is based. It is true that American Tower added additional claims on January 22, 2013 when it filed its First Amended Answer and Counterclaim (Doc. 81), but the allegations underlying those claims were present in American Tower's original Counterclaim. The standstill agreements that form the basis of American Tower's Sherman Act claim were discussed at paragraphs 2, 36, and 37 in the initial Counterclaim. *See* Doc. 9. The allegations American Tower uses to prop up its RICO claim are

essentially the same as those it alleges to support the tort claims in its original Counterclaim. American Tower says that TriStar executives are running a racketeering business by telling landowners that TriStar desires to operate cell towers, when, according to American Tower, that is not the case.[5] These same allegations are found in the original Counterclaim. *See* Defs.' Countercl. (Doc. 9) ¶¶ 1-6, 33-38. Simply, the facts at issue in the case did not change when American Tower amended its Counterclaim. *Cf. Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1222-23 (7th Cir. 1990) ("[W]here there are no changed circumstances and a litigant fails to take advantage of opportunities to conduct discovery, this court has upheld the denial of additional time to conduct discovery.").

What has changed is American Tower's understanding of the timing of conducting third party discovery. American Tower waited nearly a half a year before starting any third party discovery in this case. It waited nearly six months to subpoena TriStar's private equity owners, despite asserting in its original Counterclaim that TriStar's "scheme" was "[f]ueled by several private equity firms that are seeking a rapid return on investment. . . ." Defs.' Countercl. (Doc. 9) ¶ 1. After receiving timely objections to those subpoenas, American Tower waited another three months to file motions to compel to enforce them.

American Tower waited even longer—more than nine months—to subpoena Crown Castle and SBA Communications. While American Tower claims that it served these subpoenas promptly after TriStar produced its standstill agreements with Crown Castle and SBA, American

---

[5] American Tower persists in this theory despite the fact that TriStar does operate cell towers and operates the twenty-one cell towers it has taken over from American Tower. Pl.'s App at 6 (Decl. of Edward Wallander at ¶ 6). No landowners—the persons American Tower claims are the "victims" of TriStar's mail fraud—have complained. *Id.* For the eighteen sites where TriStar has taken over the operation of the cell tower and shares revenue with the landowner (three of the landowners received higher upfront payments in lieu of revenue sharing), the landowners receive from TriStar an average of nearly three times the annual rent they were receiving from American Tower. *Id.* In addition to these sites, TriStar has contracts with nearly 600 landowners that have cell towers currently managed by American Tower. *Id.* By the end of 2013, TriStar will have paid those landowners more than $30 million. *Id.* American Tower's lawsuit complains that these landowners are TriStar's victims.

Tower was well aware of these agreements at the time that it filed its initial Counterclaim. *Id.* ¶ 2 (claiming that TriStar sold easements to Crown Castle and SBA in exchange for an agreement not to pursue interests in land under those companies' towers). In addition to its lack of diligence in serving these subpoenas, American Tower was even more dilatory in seeking to enforce them. And as one of these non-parties recognized in responding to American Tower's motion to compel, American Tower's delay prevents it from enforcing the subpoena.[6] American Tower's failure to serve and enforce its subpoenas in an expeditious manner is the primary cause of any delay and cannot provide grounds for a continuance. *See Schaffner v. Crown Equip. Corp.*, No. C 09-00284 SBA, 2011 WL 6303408, at *2 (N.D. Cal. Dec. 16, 2011) (denying motion to continue where movant failed to "*expeditiously* seek relief from the Court to ensure that he would be sufficiently prepared for trial within the time-frame set by the Court"). In any event, it is not "extraordinary" that a third party would resist discovery, especially the broad discovery served by American Tower.

American Tower also wrongly claims that TriStar has caused delays in this action by refusing to answer "basic" interrogatories. American Tower's Mot. for Cont. (Doc. 138) at 16. On the contrary, TriStar fully responded to the interrogatories at issue, providing the factual information in its possession. *See* Jt. Submission on Defs.' Mot. to Compel (Doc. 142) at 7. For several months, American Tower has had a list of every false statement of which TriStar is aware and the name and contact information for every landowner to whom TriStar marketed, and yet it has not taken a single landowner deposition. Pl.'s App at 9 (Decl. of Tyler J. Bexley at ¶ 5).

---

[6] *See* Non-Party SBA Commc'ns Corp.'s Mem. of Law in Opp'n to Defs.' Emergency Mot. to Compel at 1, *TriStar Investors, Inc. v. Am. Tower Corp.*, Case No. 9:13-mc-80274-DMM (S.D. Fla. Apr. 8, 2013) ("American Tower's Motion—filed ***seventy-six (76) days*** after Non-Party SBA Communications first objected to the Subpoena to Produce Documents . . . —violates [the Local Rules]."); *see also id.* at 3 n.2 (noting that American Tower's purported need to file an "emergency" motion to compel "stems from its own delays" given the time that American Tower waited before serving its subpoena). TriStar has included this brief in Plaintiff's Appendix as Exhibit D, at pages 16-25.

Because American Tower's own delays are the cause of its current predicament, it is not entitled to a continuance. *See L & C Consultants*, 2008 WL 3884366, at *1-2 (stating that "the 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order" and holding that defendants were not entitled to a continuance due to their lack of diligence); *Kirkwood v. Inca Metal Prods. Corp.*, Civil Action No. 3:04-CV-0226-D, 2007 WL 2325222, at *1-2 (N.D. Tex. Aug. 13, 2007) (Fitzwater, J.) (same).

**2.   There is sufficient time in the Scheduling Order to extend the discovery deadline without moving the trial date.**

Despite American Tower's dilatory tactics, TriStar offered to agree to a sixty-day extension of the discovery deadline so that American Tower can conduct the discovery that it claims to need. American Tower declined this offer, apparently because this would create problems with other deadlines in the Scheduling Order. American Tower's Mot. for Cont. (Doc. 138) at 22. But American Tower provides no reason why fact discovery needs to be completed prior to the deadline for initial expert reports. And to the extent necessary, there is room in the Scheduling Order to accommodate a short extension of the expert disclosure deadline and most of the other pretrial deadlines without impacting the October 28 trial setting. Because the Court can simply extend the pretrial deadlines as necessary without resetting the trial date, American Tower cannot show "truly extraordinary circumstances" that justify moving the trial. *See Alexandria v. Cleco Corp.*, 1:05-cv-01121, at 1 (W.D. La. Nov. 24, 2009)[7] (denying request to continue trial where pretrial deadlines could be modified to accommodate additional time for discovery without disrupting trial date).

---

[7] This opinion is not published in any reporter or commercially available database. TriStar has attached the opinion in Plaintiff's Appendix as Exhibit C, at pages 11-14.

Moreover, American Tower does not provide any justification for its request for a ninety-day extension of all pretrial deadlines. It asserts that it needs additional time to review supposedly voluminous non-party productions and conduct depositions. But American Tower is represented in this action by two law firms among the largest in the country, with more than 1,100 attorneys between them. American Tower can certainly review all of the documents and take any necessary depositions with sixty extra days of discovery given the army of attorneys at its disposal. Additionally, the Scheduling Order limits each side to 105 depositions hours. Scheduling Order (Doc. 30) at ¶ 9. Given that American Tower has already used fifty-five deposition hours[8] (and likely will reserve several hours for expert depositions), sixty days is more than enough time for the limited deposition hours that American Tower has remaining.

**3.  A continuance of the trial date would prejudice TriStar.**

In considering a motion for continuance, "[t]he two forms of potential prejudice that must usually be evaluated . . . are undue expense and delay." *Cartier v. Egana of Switzerland (Am.) Corp.*, Civil Action No. 3:08-CV-00001-D, 2009 WL 614820, at *6 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.). If the Court resets the trial date, TriStar will experience both.

American Tower has dragged its feet in producing documents and presenting its employees for depositions since the start of this litigation.[9] Its strategy appears to be to delay resolution of this litigation in hopes of weakening TriStar's resolve to obtain justice. American

---

[8] *See* Pl.'s App. at 9 (Decl. of Tyler J. Bexley at ¶ 6).

[9] Examples of American Tower's delay tactics can be found in TriStar's first two motions to compel and the orders overruling nearly all of American Tower's objections to the discovery requests at issue. *See* Docs. 37 (Motion to Compel) & 45 (Order) (overruling American Tower's improper objections to thirty-one requests for production and two interrogatories); Docs. 47 (Motion to Compel) & 66 (Order) (overruling American Tower's improper objections to twenty-one requests for production). In addition, TriStar has had to utilize the Discovery Protocol implemented by Judge Ramirez to obtain six separate orders compelling American Tower to respond to discovery requests. *See* Docs. 76, 84, 123, 131, 132, & 136. Finally, as detailed in TriStar's most recent motion to compel (which is currently pending), American Tower not only continues to obstruct TriStar's document discovery efforts, it also refuses to present its board members for depositions or to provide deposition dates for its management team in a timely fashion. *See* Jt. Submission on Mot. to Compel (Doc. 142) at 2-3, 23-24.

Tower's motion to continue the trial date is simply the latest tactic to implement this strategy of delay. TriStar is a tiny competitor by comparison to American Tower. American Tower is well aware of this and, in fact, has asked four TriStar employees and one TriStar director at their depositions whether TriStar will run out of money in December of this year. Pl.'s App. at 86 (Dep. of David C. Hull at 116:16-21); *id.* at 92-93 (Dep. of Edward Wallander at 265:12-266:14); *id.* at 98-99 (Dep. of Jerry Vogl at 110:22-111:25); *id.* at 104-05 (Dep. of John Armour at 268:19-269:5); *id.* at 110 (Dep. of Christina Pushic at 61:18-21). Not coincidentally, American Tower has asked this Court to reset the trial to January 2014, one month after American Tower believes that TriStar will run out of money. In addition, as part of its anticompetitive scheme to prevent landowners from doing business with TriStar, American Tower and its agents continue to tell landowners that TriStar is going to go out of business. *See, e.g.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

TriStar has devoted a substantial portion of its financial resources and the time of a number of its forty employees to this litigation. *Id.* at 5 (Decl. of Edward Wallander at ¶ 4). If the trial date is reset, TriStar will be required to expend significant additional resources on the litigation. *Id.* at 6 (Decl. of Edward Wallander at ¶ 5).

Perhaps most importantly, a delay of the trial date will allow American Tower even more time to continue its anticompetitive behavior, which has continued unabated even after the filing

of this case. American Tower continues to tell landowners that it will move carriers off of towers, even though the carriers have not agreed to move and, in most cases, will not.[10] American Tower continues to tell landowners that TriStar is going to go out of business, even though it knows that is not likely.[11] American Tower continues to tell zoning officials that it will tear down towers that it does not even own.[12] This behavior must stop, and the longer the trial is put off, the greater the impact on TriStar. Since it appears that nothing short of a jury verdict and order from this Court will stop American Tower's unlawful conduct, TriStar will be significantly prejudiced by a delay in the trial of this case.

Courts across the country have consistently denied motions for continuance in similar situations, where one of the parties would be prejudiced by increased litigation costs and unnecessary delay. *See, e.g.*, *Schaffner*, 2011 WL 6303408, at *3 ("[C]ontinuance of the trial date will prejudice Defendants by unnecessarily increasing litigations costs and delaying resolution of the action."); *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 507, 511 (S.D. Iowa 1992) ("[Plaintiff] does not want a continuance, he wants his day in court. He shall have it on February 16, 1993. A continuance would increase the cost of the litigation. . . ."). And while TriStar does



[10] [redacted]

[11] [redacted]

[12] [redacted]

not know this Court's schedule, its concerns of prejudice would be even greater if the Court could only reset the trial to a date much farther in the future due to the demands placed on this Court by its criminal docket obligations and other civil trial settings. *See* United States District Court for the Northern District of Texas Civil Justice Expense and Delay Reduction Plan at 2 (noting the importance of a firm trial date and stating that "[t]he Court faces the challenge of harmonizing that preeminent principle of litigation management with the urgent demands of a steadily increasing criminal docket"); *Jochims*, 145 F.R.D. at 511 (denying motion for continuance where attempting to reset trial would "create significant problems for rescheduling the trial in the Davenport division [because a] continuance would require bumping trials with a firm trial date or possibly continuing this trial for another year. . . .").

## CONCLUSION

For the foregoing reasons, American Tower has failed to satisfy its burden of showing "truly extraordinary circumstances" to justify a continuance of the trial date. TriStar respectfully requests that the Court (1) deny American Tower's motion to continue the trial date; (2) modify the Scheduling Order to extend the discovery deadline to July 22, 2013 while leaving the remaining pretrial deadlines in place; and (3) grant TriStar any other relief to which it is entitled.

Respectfully submitted,

VINSON & ELKINS L.L.P.

*/s/ William D. Sims, Jr.*
William D. Sims, Jr.
  Texas Bar No. 18429500
Matthew R. Stammel
  Texas Bar No. 24010419
John D. Taurman
  Texas Bar No. 19680400
Kyle D. Young
  Texas Bar No. 24070899
Tyler J. Bexley
  Texas Bar No. 24073923
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel: 214.220.7700
Fax: 214.220.7716
bsims@velaw.com
mstammel@velaw.com
jtaurman@velaw.com
kyoung@velaw.com
tbexley@velaw.com

Harry M. Reasoner
  Texas Bar No. 16642000
Stacey Neumann Vu
  Texas Bar No. 24047047
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Tel: 713.758.2222
Fax: 713.758.2346
hreasoner@velaw.com
svu@velaw.com

*Attorneys for Plaintiff TriStar Investors, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2013, I served a true and accurate copy of the foregoing document on all counsel of record via filing of the same with the Court's CM/ECF system.

*/s/ Tyler J. Bexley*