## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| TRISTAR INVESTORS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| AMERICAN TOWER CORPORATION, | § | |
| AMERICAN TOWERS LLC, AMERICAN | § | |
| TOWERS INC., AMERICAN TOWER | § | |
| GUARANTOR SUB, LLC, AMERICAN | § | |
| TOWER HOLDING SUB, LLC, AMERICAN | § | |
| TOWER ASSET SUB, LLC, AMERICAN | § | CIVIL ACTION NO. 3:12-CV-499 |
| TOWER ASSET SUB II, LLC, AMERICAN | § | |
| TOWER MANAGEMENT, LLC, | § | |
| AMERICAN TOWER L.P., SPECTRASITE | § | |
| COMMUNICATIONS, LLC, and | § | |
| AMERICAN TOWER, LLC, | § | |
| | § | |
| Defendants. | § | |
| ———————————————— | § | |
| | § | |
| AMERICAN TOWER, LLC, SPECTRASITE | § | |
| COMMUNICATIONS, LLC, and | § | |
| AMERICAN TOWERS, LLC, | § | |
| | § | |
| Counter-Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| TRISTAR INVESTORS, INC., DAVID IVY, | § | |
| ED WALLANDER, ROBERT GILES, DALE | § | |
| GILARDI, JERRY VOGL, JOHN | § | |
| LEMMON, MICHAEL MACKEY, and | § | |
| MATT NEWTON, | § | |
| | § | |
| Counter-Defendants. | § | |
| ———————————————— | § | |

## APPENDIX TO AMERICAN TOWER DEFENDANTS' SECOND NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO MODIFY THE SCHEDULING ORDER AND FOR CONTINUANCE OF THE TRIAL DATE

| EXHIBIT | DESCRIPTION | PAGES |
|---------|-------------|-------|
| 1 | Ruling on Motion to Compel; United States District Court District of Connecticut | 6-7 |
| 2 | Declaration of Erik Laykin | 9-21 |

APP 2

Dated: May 30, 2013

Respectfully submitted,

*/s/ Jon G. Shepherd*

Jon G. Shepherd
Texas State Bar No. 00788402
Courtney L. Gilbert
Texas State Bar No. 24066026
ALSTON & BIRD, LLP
2828 N. Harwood Street, Ste. 1800
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
jon.shepherd@alston.com
courtney.gilbert@alston.com

David M. Rownd (*Pro Hac Vice*)
Illinois State Bar No. 6207951
THOMPSON COBURN, LLP
55 E. Monroe Street, 37th floor
Chicago, IL 60603
Telephone: (312) 580-2311
Facsimile: (312) 580-2201
drownd@thompsoncoburn.com

Michael L. Nepple (*Pro Hac Vice*)
Missouri State Bar No. 42082
Edwin G. Harvey (*Pro Hac Vice*)
Missouri State Bar No. 30565
Jason A. Wheeler (*Pro Hac Vice*)
Missouri State Bar No. 52298
THOMPSON COBURN, LLP
One US Bank Plaza
St. Louis, MO 63101
Telephone: (314) 552-6149
Facsimile: (314) 552-7000
mnepple@thompsoncoburn.com
eharvey@thompsoncoburn.com
jwheeler@thompsoncoburn.com

APP 3

Andrew P. Fishkin (*Pro Hac Vice*)
New York State Bar No. 2234714
FISHKIN LUCKS LLP
One Riverfront Plaza, Suite 220
Newark, NJ  07102
Telephone:  (973) 536-2800
Facsimile:  (973) 679-4435
afishkin@fishkinlucks.com

COUNSEL FOR DEFENDANTS/
COUNTER-PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

On May 30, 2013, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jon G. Shepherd*
Jon G. Shepherd

# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TRISTAR INVESTORS, INC.,          :
                                  :
        Plaintiff,                :
                                  :
        v.                        :      CASE NO.   3:12MC162(AWT)
                                  :
AMERICAN TOWER CORP.,             :
                                  :
        Defendant.                :

### RULING ON MOTION TO COMPEL

The plaintiff, TriStar Investors, Inc. ("TriStar") brought suit against American Tower Corp.("American Tower") et al. in the District Court for the Northern District of Texas.  American Tower thereafter served a subpoena duces tecum on Wood Creek Capital Partners, LLC ("Wood Creek"), a nonparty, in the District of Connecticut.  Pending before this court is American Tower's motion to compel Wood Creek to comply with its subpoena. (Doc. #1.)  Upon careful consideration of the arguments made by counsel during oral argument and in their papers, the court rules as follows:

1.    Requests for Production 7 and 8 are granted.

2.    Request for Production 14 is denied as vague and overbroad.

3.    Request for Production 13 is granted.

4.    Request for Production 24 is granted.

5.    Request for Production 15 is granted.

6.    Request for Production 17 is granted in part only as to Wood Creek's analysis of its TriStar investment.  The remainder of the request is denied as overbroad.

7.    Requests for Production 19 and 20 are granted in part only as

to documents relating to TriStar.

8.    Request for Production 4 is denied without prejudice as overly broad.

9.    Requests for Production 11 and 12 are denied as moot.

10.   Request for Production 18 is granted.

Wood Creek seeks attorney's fees on the grounds that American Tower's motion was premature.  On the record before the court, the request for fees incurred in responding to the motion to compel is denied.

Pursuant to D. Conn. L. Civ. R. 37(d), Wood Creek's "compliance [with the court's order] shall be made within fourteen days of the filing of this order."

SO ORDERED at Hartford, Connecticut this 22nd day of May, 2013.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge

2

Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| TRISTAR INVESTORS, INC., | ) | CASE NO. 9:13-mc-80274-DMM |
| | ) | |
| Plaintiff, | ) | |
| | ) | (Pending in the United States District |
| vs. | ) | Court for the Northern District of Texas, |
| | ) | Case No. 3:12-cv-499) |
| AMERICAN TOWER CORPORATION, *et al*., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**DECLARATION OF ERIK LAYKIN**

I, Erik Laykin, state and declare as follows:

## I.  PERSONAL BACKGROUND

1.      I am over the age of 18 and competent to make this Declaration.  I have personal knowledge of the facts stated in this Declaration.  If called upon, I could and would competently testify to the following matters.

2.      I am a Managing Director of the Global Electronic Discovery and Investigations practice of Duff & Phelps, LLC (D&P), an independent consulting firm of approximately 1,100 professionals, which provides litigation, financial, restructuring and operational consulting services to government agencies, legal counsel and companies in a variety of industries.  I have been employed by D&P since July 2008, and am based in its Los Angeles, California office.

3.      I have played an active role in the development of the Computer Forensic and Electronic Discovery industry since the mid-1990's and have become very familiar with a variety of software  technologies, computer systems, programming languages, computer forensic and

1

electronic discovery systems, and standards of practice within the eDiscovery industry.  As a result I have managed hundreds of electronic discovery matters on behalf of plaintiffs and defendants in state and federal courts throughout the United States.

4.      I have provided expert training on the topics of Computer Forensics, Cyber Crime and Electronic Discovery to numerous organizations including the FBI (Federal Bureau of Investigation), the ABA (American Bar Association), the HTCIA (High Tech Crime Investigation Association), AICPA (American Institute of Certified Public Accountants), the Governments of United Kingdom, Malaysia, the United Arab Emirates, Republic of Taiwan, Special Administrative Region of Hong Kong and the People's Republic of China.

5.      I have served as an expert witness, eDiscovery neutral and investigator, and have been appointed by U.S Federal Courts as a Special Master in complex cases involving information technology and the disputes which arise from its usage within a business and network environment. My Curriculum Vitae is attached as Exhibit A.

## II.      SCOPE OF ASSIGNMENT

6.      I was retained through the law firm of Greenberg Traurig, LLP on May 10$^{t,h,}$ 2013 to take possession of and review electronic evidence related to this matter for the purpose of developing and implementing a process which will assist non-party SBA Communications Corporation ("SBA") to meet their electronic discovery obligations in this litigation. The scope of my review and effort thus far has consisted of the analysis of the SBA email systems, servers, computers and segregated custodian data for a group of 16 individual custodians.  The scope of my work also included the physical forensic collection of the data contained on these systems, and

2

the processing of this data for the purpose of allowing it to be keyword searched. Current metrics related to this effort have been prepared. (See Exhibit B) The scope of our work also included providing the Greenberg Traurig firm with an online repository for the review of these documents and assistance with the production of this data to defendant American Tower Corporation in response to its subpoena.

7.     The scope of my review also included interviews with SBA information technology staff including those individuals who are responsible for the company's corporate email and archiving solutions; this allowed our team to rapidly develop and execute on a plan to address the significant logistical challenges presented by the task of identifying, collecting, processing, hosting, reviewing and producing the initial data from the SBA IT Infrastructure within a 5-day period.

8.     The short time frame which was imposed on our team for executing on each of the steps of the Electronic Discovery Reference Model (see: http://www.edrm.org) presented out-of-the-ordinary challenges. While the computer equipment, software and man power deployed during this exercise was of the highest commercial caliber; there are finite physical limitations which impact the speed at which this volume of data can be processed using commercial systems typical of an eDiscovery processing center, or computer forensic lab. During these procedures we tested the outer boundaries of what can be achieved with this current technology in such a short period of time and successfully collected, processed, searched, hosted, reviewed and produced data from over 170 GB (Gigabytes) of data representing over 1 million emails and attachments.

9.     Presently my team is continuing with the collection, processing, searching, hosting and review of additional data sources which will allow for subsequent productions of data in the coming weeks.

3

### III.   SUMMARY OF EFFORT TO COLLECT, PRESERVE, PROCESS, REVIEW AND PRODUCE ELECTRONIC DATA FROM SBA

10.     D&P was on-site at SBA beginning Monday morning, May 13, to begin collecting data, and has transferred the data it has collected  to the D&P Forensic Lab in Los Angeles for, among other things,  processing, de-duplication, ingestion, indexing, searching and hosting onto a Relativity advanced E-Discovery review platform for relevance and privilege review by counsel.  For the purpose of this overview I have provided a brief overview of each of these steps below:

   a.   **Processing** – This is the step which is undertaken within the confines of the LA D&P Lab whereby the contents of each of the drives that contain forensically sealed and preserved data are extracted and placed on to new drives which can be used for further downstream processing. During this phase a number of procedures are run against the evidence including the removal of unnecessary machine created files such as temp files; the removal of program files and other application files that are not relevant to the facts of the case and finally the isolation of the  "user created" files which generally consist of email, Microsoft Office files, Adobe PDF files and other files that are association with applications that the end user used during the ordinary course of business.

   b.   **De-Duplication** – This process allows our systems to de-duplicate each of the files contained within each forensic image or data store against each other. The purpose of which is to remove duplicate files and so as to remove the necessity to review files more than once. Documents are deduplicated by MD5 hash value. The hash is calculated as follows:

      i.   Email - the MD5 hash for email files is computed using the

4

following meta-data fields: To, From, CC, BCC, Subject, Date Sent, Attachment Name, Body.

  ii.  Documents - for electronic document (non-email) files, the MD5 hash is calculated based on the binary content of the file and not specific meta-data fields.

c. **Ingestion** –This process allows for the resulting post de-duplicated data set to be ingested into the indexing engine.

d. **Indexing** – The process is designed to capture all of the data within the resulting data set for the purpose of building a searchable index, in essence a small search engine which is specific to this matter.

e. **Searching** – This is the process which is employed once the index has been built to search the data set based on a variety of factors including dates, file names, keywords and other meta-data fields.

f. **Hosting -** The hosting phase is the process of moving the data which has been identified during the search phase as being responsive to a search criteria from the index to the hosted review platform which is served online by the Relativity Review Platform on the Internet.

g. **Relativity Review Platform** – The Relativity Review Platform is one of many online data review repositories which has built in functionality which allows legal review teams to sort, search, tag, annotate and review electronic documents that have gone through the aforementioned stages and must be reviewed prior to further processing and production.

11.     In all and as of today, D&P collected 4.450 Terabytes of hard drive space in forensic images and 93 Gigabytes of Home directory data. For the purpose of illustration and for the purpose of demonstrating how very large this data set is I note that one gigabyte is the equivalent of 1000 megabytes. One megabyte holds enough storage to store over 600 pages of type written text.  Therefore one gigabyte of data can equal 677,963 pages of text. 4.450 terabytes of data equals approx. 4,450 gigabytes which translates into over 3 billion pages of text.   Thus, the task of processing, searching and managing this vast amount of data can impose significant IT and resource challenges.

12.     Throughout Tuesday May 14th and Wednesday May 15th, 2013 the Los Angeles D&P Lab team continued with their processing which included applying search terms to these vast data sets. In a rolling fashion, the D&P team began loading data into the Relativity review platform for attorney review.

13.     On Friday morning, May 17th, 2013 D&P again met with the SBA Information Technology Team to discuss options for collecting the data contained within the group shares /departmental shares which require restoration from the SEV (Symantec Enterprise Vault). Presently, the maximum through put that we have been able to achieve on the SBA network when connecting our collection equipment to it has been 3 GB per hour.  Our estimate of the total amount of data which needs to be collected from the departmental shares is approximately 657 GB of data which translates into 219 hours, or a little over 9 days at present transfer speeds. This estimate does not take into account potential downtime caused by network or equipment issues.  SBA and D&P are working with Symantec to determine a more expeditious way to extract this data from the SEV without compromising the integrity of the network and its function of supporting day to day operations as well as the required back up and disaster recovery functions which the SEV provides to the entire company.

14.    With the present deadlines in place, this data set of departmental shares is not reasonably accessible and should be disincluded from the collection unless a more reasonable time frame for its production is established.

15.    In summary, presently D&P is in possession of a large volume of electronic data which has been collected over the last several days. Much of this data is still in the throes of being staged, processed and deduplicated to allow for further keyword searching and hosting on the Relativity platform. (see below tables in Exhibit B)

16.    Bottlenecks and challenges through the process have included a limit to the amount of data that can be extracted from the SBA network per minute / hour and processing speeds of the technical, analytical and forensic tools which are being used for the collection and processing of the data. I note that in every stage of this process the D&P team is using state of the art tools with the maximum available throughput which is commercially available.

## IV.    CURRENT KNOWN METRICS OF THE COLLECTED SBA DATA (16 CUSTODIANS)

17.    As of May 16th, 2013, D&P has ingested and completed the processing of the Microsoft Exchange email repositories of 16 SBA custodians. These 16 repositories represent approximately 168.2 Gigabytes (GB) of data. This data represents 1,131,309 emails and attachments.

18.    As of May 16th, 2013, D&P has collected home directories ("I Drives") of each of these 16 custodians totaling 93.32 GB of data representing 98,979 files.

APP 15

19.     As of May 16th, 2013, D&P has collected forensic images of laptops and desktops of the 16 SBA custodians totaling 4,450 GB of data.

20.     Presently, D&P technicians are continuing their efforts to collect and process data from  within SBA and are continuing efforts to expeditiously process the existing data which has already been collected.

## V.     OVERVIEW OF EXPECTED EFFORT TO COMPLETE THE SBA EDISCOVERY PRODUCTIONS

21.     Based on the current data volumes which have been collected from SBA, D&P expects to complete the restoration of all of the forensic images of the 16 SBA custodians by Friday, May 24th, 2013. Presently data from the 16 custodian home directories and email files (PST File) have already been processed, culled, deduplicated and keyword searched and uploaded to the Relativity online review platform.   Once agreement is in place on the scope of the additional keywords to be applied to data which has already been processed, those searches can be run in short order and the resulting data set can be uploaded to Relativity for review.  In addition, the data contained on the 16 custodian laptops can also be searched with the additional keywords as of May 24th. 2013.   The results of these searches will be loaded onto Relativity daily and in many cases hourly in a rolling fashion as data becomes available.

22.     Should additional custodians be identified who need to be included in the population, Duff & Phelps will continue their collection effort on-site at SBA to collect the relevant data stores for those custodians as well. We anticipate that this will include additional laptops / desktops, PST Email files and home directories. Once agreement is in place for which additional custodians are to be collected, D&P will be able to turn this task around in a similar time frame as the initial 16 custodians.

8

23.     Lastly, once the methodology for the restoration of the departmental shares has been established, D&P will work with SBA to restore this data and to process, cull, deduplicate and keyword search it in accordance with the agreed protocol.. Based on current throughput and my current understanding of the time required for the restoration, the keywords to be used, and the time required for D&P's data processing, this process will take several weeks to complete, at which time the resulting data set can be uploaded to Relativity for review.

**I RESERVE THE RIGHT TO SUPPLEMENT THIS REPORT AND TO REVISE MY CONCLUSIONS TO ACCOUNT FOR ANY NEW INFORMATION THAT MAY BE MADE AVAILABLE BY THE REPRESENTATIVES FOR THE PLAINTIFFS, DEFENDANTS, THEIR COUNSEL OR ANY OTHER SOURCE.**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 22th day of May, 2013, at Los Angeles, California.

ERIK LAYKIN

9

## Exhibits

A.    CV of Erik Laykin  (see attached)
B.    Processing Metrics as of May 22nd 2013

## EXHIBIT B

### PROCESSING METRICS FROM DUFF & PHELPS AS OF MAY 22 2013

1.  Number of emails and if available attachments in each PST.

| Last Name | First Name | Source | Size (GB) | No. Items | No. Attachments | Responsive Emails |
|---|---|---|---|---|---|---|
| Aljovin | Martin | Exchange | 10.20 | 73648 | 35338 | 389 |
| Bagwell | Kurt | Exchange | 19.00 | 91815 | 36843 | 174 |
| Cavanagh | Brendan | Exchange | 11.80 | 65400 | 17946 | 490 |
| Ciarfella | Mark | Exchange | 12.80 | 56509 | 20927 | 302 |
| DeRussy | Mark | Exchange | 12.14 | 12179 | 3290 | 81 |
| Gainor | Maria | Exchange | 15.80 | 104026 | 28633 | 333 |
| Gans | Shawn | Exchange | 1.25 | 18408 | 7102 | 549 |
| Harris | Larry | Exchange | 5.10 | 25205 | 7941 | 193 |
| Hunt | Tom | Exchange | 11.10 | 158885 | 63938 | Not Processed |
| Koenig | Joshua | Exchange | 12.30 | 70874 | 39481 | Not Processed |
| Lazarus | Brian | Exchange | 6.07 | 83273 | 11935 | 366 |
| Prewitt | Coleman | Exchange | 10.90 | 121730 | 58026 | Not Processed |
| Schwartz | Sharon | Exchange | 17.20 | Not Processed | Not Processed | Not Processed |
| Seidman | Neil | Exchange | 7.70 | 86307 | 31597 | 452 |
| Silberstein | Jason | Exchange | 3.64 | 23714 | 7563 | 120 |
| Stoops | Jeff | Exchange | 11.20 | 139336 | 42808 | 821 |
| **Total** | | | **168.20** | 1,131,309 | 413,368 | 4,270 |

APP 19

2. Personal Shares

| Last Name | First Name | Source | Size (GB) | No. Items |
|---|---|---|---|---|
| Aljovin | Martin | Home Dir | 20.70 | 11,583 |
| Bagwell | Kurt | Home Dir | 15.60 | 11,041 |
| Cavanagh | Brendan | Home Dir | 9.28 | 14,732 |
| Ciarfella | Mark | Home Dir | 4.95 | 3,599 |
| DeRussy | Mark | Home Dir | 0.15 | 455 |
| Gainor | Maria | Home Dir | 5.59 | 11,774 |
| Gans | Shawn | Home Dir | 8.60 | 428 |
| Harris | Larry | Home Dir | 0.93 | 2,549 |
| Hunt | Tom | Home Dir | 7.58 | 13,702 |
| Koenig | Joshua | Home Dir | 1.73 | 4,235 |
| Lazarus | Brian | Home Dir | 11.80 | 15,207 |
| Prewitt | Coleman | Home Dir | 0.12 | 660 |
| Schwartz | Sharon | Home Dir | 3.76 | 46 |
| Seidman | Neil | Home Dir | 0.26 | 1,141 |
| Silberstein | Jason | Home Dir | 1.80 | 6,667 |
| Stoops | Jeff | Home Dir | 0.47 | 1,160 |
| **Total** | | | **93.32** | **98,979** |

12

3.  Forensic Images of Custodian Laptops / Desktops.

| Last Name | First Name | Image Name | Size (GB) |
|---|---|---|---|
| Aljovin | Martin | 2013-DPFTA-11Q005 | 160 |
| Bagwell | Kurt | 2013-DPFTA-11Q001 | 128 |
| Cavanagh | Brendan | 2013-DPFTA-11Q040 | 250 |
| Cavanagh | Brendan | 2013-DPFTA-11Q003 | 128 |
| Ciarfella | Mark | 2013-DPFTA-11Q004 | 128 |
| DeRussy | Mark | 2013-DPFTA-11Q045 | 160 |
| Gainor | Maria | 2013-DPFTA-11Q007 | 320 |
| Gans | Shawn | 2013-DPFTA-11Q008 | 320 |
| Harris | Larry | 2013-DPFTA-11Q009 | 320 |
| Hunt | Tom | 2013-DPFTA-11Q010 | 250 |
| Koenig | Joshua | 2013-DPFTA-11Q011 | 320 |
| Lazarus | Brian | 2013-DPFTA-11Q013 | 128 |
| Prewitt | Coleman | 2013-DPFTA-11Q015 | 320 |
| Schwartz | Sharon | 2013-DPFTA-11Q016 | 250 |
| Seidman | Neil | 2013-DPFTA-11Q017 | 320 |
| Silberstein | Jason | 2013-DPFTA-11Q018 | 320 |
| Stoops | Jeff | 2013-DPFTA-11Q002 | 500 |
| Stoops | Jeff | 2013-DPFTA-11Q014 | 128 |
| **Total** | | | **4,290** |

4.  Drive letter and name of departmental shares identified by custodians as possibly containing relevant data sets.

| Share | Network Address | Relevance |
|---|---|---|
| V drive | M&A folders | Neil Seidman - M&A folders for closed deals by year |
| H drive | \Corp Org Docs\Tristar | Josh Koenig |
| H drive | \Legal Operations\SSchwartz\Tristar | Sharon Schwartz – two amendment drafts |
| J drive | \MA-Land Purchase | Maria Gainor – production files for #4, #14, #19 |
| V drive | \^New Deals\2 – Closed\2009 Closed Deals\TriStar Communications, LLC | Shawn Gans – saved from prior acquisitions |